**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANGEL JENKINS, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

RAMY BROOK, LLC.,

Defendant.

Civil Action No. ________

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

----------------------------------------------------------

Plaintiff ANGEL JENKINS ("Plaintiff" or "Ms. Jenkins"), individually and on behalf of all others similarly situated, (collectively, "Plaintiffs"), by and through her attorneys, Robert Schonfeld, Esq. of JOSEPH NORINSBERG, LLC, brings this action against RAMY BROOK, LLC ("RAMY BROOK" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.ramybrook.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff ANGEL JENKINS is a resident of New York, New York, and is legally blind due to Retinitis Pigmentosa, a progressive retinal degenerative disease that causes severe visual field constriction and substantial central vision loss. As documented in the New York State Office of Children and Family Services Report of Legal Blindness, completed by Dr. Robert Friedman, M.D. of Mount Sinai Morningside on April 12, 2025, Plaintiff meets the statutory definition of legal blindness because her better eye has a visual field limitation of less than 20

degrees**.** Dr. Friedman identified Retinitis Pigmentosa as the cause of her blindness and certified her as legally blind for purposes of registration with the New York State Commission for the Blind. *(See Exhibit A.)*

2. Due to her permanent and progressive visual impairment, Ms. Jenkins relies exclusively on screen-reading software, including NonVisual Desktop Access (NVDA), to navigate digital interfaces, read product information, and complete online transactions. Her reliance on assistive technology is essential to her ability to access goods and services on equal terms with sighted consumers. NVDA's ability to interpret properly coded website is critical to her independence, safety, and daily functioning.

3. Plaintiff, Angel Jenkins, a resident of New York, New York, is permanently disabled due to bilateral blindness. As certified by Dr. Robert Friedman, MD, who is on April 25, 2025, Ms. Cordoba has no light perception in either eye and meets the statutory definition of legal blindness under New York State and federal law. (See Exhibit A)

4. This is a civil rights action brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"), the New York State Civil Rights Law, N.Y. Civ. Rights Law §§ 40 et seq. ("NYCRL"), the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, against Defendant Ramy Brook, LLC ("Ramy Brook" or "Defendant") for its failure to design, construct, maintain, and operate its commercial website, https://www.ramybrook.com ("Website"), in a manner that is fully accessible to and independently usable by blind and visually impaired individuals who rely on screen-reading technology.

5. Ramy Brook, LLC is a fashion and apparel company headquartered in New York

City that operates a nationwide direct-to-consumer e-commerce business through its Website. Defendant markets, offers, and sells women's clothing, dresses, tops, pants, swimwear, accessories, and related merchandise to consumers throughout the United States, including residents of the State of New York.

6. Defendant is a "place of public accommodation" as defined by the ADA because it owns and operates a commercial Website that offers goods and services to the general public. Defendant's Website is a sales establishment and service establishment within the meaning of 42 U.S.C. § 12181(7).

7. Defendant's Website contains **pervasive, systemic accessibility barriers** that deny blind and visually impaired users full and equal access to the goods, services, information, and purchasing functions available to sighted users. As documented in the **SortSite Accessibility Validation Report** dated March 28, 2026, the Website contains:

- **22 distinct Level A WCAG 2.1 violations across 1,295 pages**,
- **Level AA failures across 1,278 pages**, and
- **Level AAA failures across 1,277 pages**. These include missing or placeholder alternative text, empty form labels, unlabeled buttons, keyboard-inaccessible controls, improper ARIA roles, empty headings, invalid HTML structures, and suppressed focus outlines—each of which independently prevents screen-reader users from navigating or completing transactions. Exhibit B

8. The **WAVE Web Accessibility Evaluation Report** further confirms the Website's inaccessibility, identifying **101 errors**, **162 contrast errors**, **2665 structural/ARIA issues**, and an overall **AIM accessibility score of 2.3 out of 10**. These errors include:

- empty or missing alternative text,
- empty links and headings,
- unlabeled form controls,
- inaccessible interactive elements,
- and severe color-contrast failures. These barriers prevent blind users from perceiving product information, selecting sizes or colors, adding items to the cart, or completing purchases.

9. The **SortSite Broken Link Report** reveals **broken HTTP links returning repeated 400 Bad Request errors across hundreds of pages**, including collection pages, product pages, blog pages, the sitemap, and the store-locator page. These broken links further impede navigation and prevent screen-reader users from accessing critical content. Exhibit D

10. The **SortSite Site Quality Report** confirms that out of 3,417 pages and files scanned:

- **1,303 pages** have overall quality issues,
- **1,295 pages** have broken links or other errors,
- **1,295 pages** have accessibility problems, and
- **1,286 pages** have W3C standards violations.

These findings demonstrate that Defendant's Website suffers from **widespread, systemic accessibility failures**, not isolated defects. Exhibit E

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), as this action arises under Title III of the ADA, 42 U.S.C. §§ 12181 et

seq., and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq.*) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") & § 296 *et seq.*; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) because Plaintiff resides in New York County**,** accessed and attempted to use the Website from her home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

14. Defendant is subject to personal jurisdiction in this District because it transacts business in New York, maintains a commercial website accessible to and targeted at residents of New York, ships products to customers in New York. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

15. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within

this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## PARTIES

16. Plaintiff ANGEL JENKINS is a legally blind individual residing at 228 West 124th Street, Apt. #23, New York, New York 10027, within the Southern District of New York. As documented in a Report of Legal Blindness (OCFS-4599) completed on April 12, 2025, by Dr. Robert Friedman, M.D., an Ophthalmologist at Mount Sinai Morningside, located at 1001 Park Avenue, New York, New York 10028, Ms. Jenkins has been diagnosed with Retinitis Pigmentosa, a progressive hereditary retinal dystrophy that causes degeneration of the photoreceptor cells, ultimately resulting in severe central visual impairment. Ms. Jenkins is registered with the New York State Commission for the Blind and Visually Handicapped ("CBVH") under Registration No. A.19038.

17. As a direct consequence of her visual disability, Plaintiff is unable to perceive, interpret, or interact with visual content on websites and digital platforms without the assistance of screen-reading technology.

18. Plaintiff uses NVDA (NonVisual Desktop Access), a widely recognized free, open-source screen reader for the Microsoft Windows operating system, as her primary assistive technology to access websites and digital content. NVDA converts on-screen text, images (when properly labeled with alternative text), links, buttons, form fields, and other interactive elements into synthesized speech and refreshable Braille output, enabling blind and visually impaired users to navigate and interact with websites.

19. For NVDA to function effectively, websites must comply with the Web Content

Accessibility Guidelines ("WCAG") 2.1, Level AA, as published by the World Wide Web Consortium ("W3C"), which is the technical standard referenced by the United States Department of Justice for compliance with ADA Title III. Compliance requires, among other things, that all images contain descriptive alternative text, all form controls be properly labeled, all interactive elements be keyboard-operable and have accessible names, sufficient color contrast exist between text and background, headings be used to structure content, and ARIA roles and properties be implemented correctly.

20. Defendant RAMY BROOK, LLC ("Ramy Brook" or "Defendant") is, upon information and belief, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

21. Defendant owns, operates, and controls the fashion brand "Ramy Brook", which offers women's designer apparel, including dresses, tops, pants, denim, swimwear, accessories, and related products to consumers throughout the United States, including residents of New York.

22. Defendant operates a direct-to-consumer e-commerce website located at https://www.ramybrook.com ("the Website"), through which it markets, offers for sale, and sells its products to the general public. The Website allows users to browse collections, view product detail pages, select sizes and colors, add items to a virtual shopping cart, and complete purchases for shipment to New York.

23. Upon information and belief, Defendant also operates at least one brick-and-mortar retail store in New York City under the "Ramy Brook" brand, including a flagship boutique at 1044 Madison Avenue, New York, N.Y. 10075, and a Southhampton outlet at 44 Main Street, Southhampton, New York, 11968, where it sells the same or similar merchandise offered on the Website.

24. At all relevant times, Defendant has owned, operated, controlled, and been responsible for the design, coding, maintenance, and ongoing operation of the Website, https://www.ramybrook.com including decisions regarding whether, when, and how to implement accessibility features necessary to ensure that blind and visually impaired consumers, such as Plaintiff, have full and equal access to the goods, services, privileges, and advantages offered thereon.

## STATEMENT OF FACTS

25. Plaintiff ANGEL JENKINS is an active online consumer who regularly uses her NVDA screen reader to browse, research, compare, and purchase products from e-commerce websites. Ms. Jenkins has a genuine, bona fide interest in purchasing women's apparel, dresses, and accessories from Defendant's Website, www.ramybrook.com, a brand she learned about through friends and social media recommendations highlighting Ramy Brook's dresses, tops, and seasonal collections.

26. On **January 8, 2026**, Ms. Jenkins visited Defendant's Website using NVDA with the intent to purchase the **Verona Embroidered Organza Mini Dress**, a product featured prominently on Defendant's Spring 2026 collection pages. Upon loading the product page, NVDA immediately failed to announce the page title because the document title was blank—an error confirmed in the WAVE report. NVDA then encountered multiple **placeholder alt attributes** such as 'IVORY|1' and 'WHITE|1', which provided no meaningful description of the product images. As a result, NVDA announced only "image" or "IVORY vertical bar one," preventing Ms. Jenkins from understanding the dress's appearance, color, or style. The **size-selection controls** were implemented as **empty button elements nested inside anchor tags**, each lacking an accessible name. NVDA announced each only as "button," without indicating the size option. Ms. Jenkins

attempted to navigate using NVDA's heading shortcuts, but the page contained **empty headings**, causing NVDA to repeatedly announce "blank," disorienting her and preventing her from locating the "Add to Cart" button. She was unable to select a size, review product details, or complete a purchase.

27. On **January 15, 2026**, Ms. Jenkins returned to the Website to view the **Odessa Cotton Knit Combo Midi Dress**, another product she was interested in purchasing for an upcoming event. The same systemic barriers persisted. The product images contained **null alt attributes paired with ARIA labels**, a WCAG 2.1 Level A violation documented across **1,278 pages** in the SortSite report. NVDA either ignored the images entirely or announced irrelevant ARIA labels, providing no meaningful description. The **interactive controls** for selecting size and color were **not keyboard-operable**, violating WCAG 2.1 § 2.1.1. NVDA announced the size selector as "button," "button," "button," without identifying the sizes. The WAVE report confirmed **95 empty form labels**, and Ms. Jenkins encountered these directly: the size dropdown had no accessible name, and the "Add to Cart" button was coded as an empty element. She attempted to use NVDA's forms mode to locate the purchase controls, but the unlabeled form fields prevented her from completing the transaction.

28. On **February 3, 2026**, Ms. Jenkins made a third attempt to shop on Defendant's Website, this time navigating to the **Tahlia Printed Cotton Mini Dress** product page. The SortSite Accessibility Validation Report documents that **interactive elements across 752 pages lacked ARIA roles**, including missing `role="button"` or `role="link"` attributes. Ms. Jenkins experienced this firsthand: NVDA announced several clickable elements as "group" or "list," without indicating their purpose. The product page also contained **invalid list structures**, where elements with `role="listbox"` improperly contained elements with `role="listitem"`,

causing NVDA to misinterpret the page structure. Additionally, the page suffered from **severe color-contrast failures**, confirmed across **1,275 pages** in the SortSite AA findings. Ms. Jenkins retains limited residual vision, but the low-contrast text rendered product specifications unreadable even with magnification. She was unable to determine available sizes, review product details, or add the item to her cart.

29. On **February 14, 2026**, Ms. Jenkins returned to the Website one final time, attempting to purchase the **Verona Embroidered Organza Mini Dress**, the **Odessa Cotton Knit Combo Midi Dress**, and the **Tahlia Printed Cotton Mini Dress**. The same barriers remained unremediated. Specifically:

-  **1,295 pages** contained broken links, including repeated **400 Bad Request** errors on social-media links embedded in product pages;

-  **1,278 pages** contained Level AA color-contrast failures;

-  **1,295 pages** contained Level A failures involving missing or placeholder alt text;

-  **752 pages** contained keyboard-inaccessible controls;

-  **1,258 pages** contained null alt attributes paired with ARIA labels;

-  **84 pages** contained empty headings;

-  **240 pages** contained ambiguous link text such as “Click Here,” preventing NVDA from voicing link purpose;

-  **1,278 pages** suppressed focus outlines, preventing keyboard users from tracking navigation;

-  **1,295 pages** contained W3C standards violations affecting NVDA's ability to parse the DOM. These barriers prevented Ms. Jenkins from independently selecting sizes, reviewing product descriptions, navigating between product images, or completing any purchase.

30. Ms. Jenkins intends to return to Defendant's Website to purchase the **Verona Embroidered Organza Mini Dress**, the **Odessa Cotton Knit Combo Midi Dress**, and the **Tahlia Printed Cotton Mini Dress** once the accessibility barriers documented herein are remediated. Her interest in these products is genuine and ongoing: each dress is part of Defendant's Spring 2026 collection, and Ms. Jenkins has no adequate alternative means to purchase these specific items, as they are sold primarily through Defendant's direct-to-consumer Website. Her visits on **January 8, January 15, February 3, and February 14, 2026,** were genuine, purposeful, and motivated by her desire to purchase these specific products on the specific product pages she visited. On each occasion, she attempted to read product descriptions, review specifications, select sizes, and add items to her cart but was prevented from doing so by concrete, page-level accessibility barriers affecting interactive buttons, form controls, headings, link text, color contrast, ARIA roles, and page titles. Her inability to complete these transactions reinforces her motivation to return once those barriers are removed.

31. On each of these visits, Plaintiff attempted to purchase three specific items from Defendant's Spring 2026 collection:

the **Verona Embroidered Organza Mini Dress**,

the **Odessa Cotton Knit Combo Midi Dress**, and

the **Tahlia Printed Cotton Mini Dress**. These products were selected intentionally and purposefully by Plaintiff based on her personal interest in Defendant's apparel and her desire to purchase these exact items.

32. Plaintiff attempted to: (a) read product descriptions; (b) review available sizes and colors; (c) navigate product images; (d) select a size; and (e) add the items to her shopping cart. She was unable to complete any of these tasks because Defendant's Website contained **concrete, page-level accessibility barriers**, including missing or placeholder alt text, empty form labels, unlabeled buttons, keyboard-inaccessible controls, invalid ARIA roles, empty headings, ambiguous link text, suppressed focus outlines, and broken links.

33. Plaintiff's inability to complete her intended purchases was directly caused by Defendant's failure to make its Website accessible to blind users who rely on screen-reading technology. These barriers prevented Plaintiff from perceiving product images, identifying available sizes, navigating interactive elements, or completing checkout.

34. Plaintiff has a **genuine, continuing, and bona fide intent to return** to Defendant's Website to purchase the **same three products** she attempted to buy on her prior visits. She especially likes the style of these dresses, which she needs for social occasions. Plaintiff's interest in these items is ongoing, and she has no adequate alternative means to purchase them because Defendant sells these products primarily through its Website.

35. Plaintiff's intent to return is credible and non-speculative because:

- she attempted to purchase **specific products** on **specific dates**,
- she visited **specific product pages**,

- she was prevented from completing **specific transactions**, and
- she remains interested in purchasing **those same products** once the Website becomes accessible.

36. Plaintiff has suffered, and continues to suffer, a concrete and particularized injury-in-fact caused by Defendant's failure to make its Website accessible. This injury is (a) traceable to Defendant's conduct, and (b) redressable by a favorable decision of this Court ordering Defendant to bring its Website into compliance with the ADA and WCAG 2.1 Level AA standards.

**DEFENDANTS KNEW OF THE ADA MANDATES YET CHOSE TO IGNORE THE RELEVANT STATUTORY REGIME**

37. Defendant has long been on notice of its obligations under Title III of the Americans with Disabilities Act and the requirement that commercial websites be accessible to blind and visually impaired consumers. In October 2020, Plaintiff Brian Fischler, represented by attorney Christopher H. Lowe, Esq., filed *Fischler v. Ramy Brook, LLC,* No. 1:20-cv-08709 (S.D.N.Y.), alleging that Defendant's Website contained numerous accessibility barriers that prevented blind users from accessing its goods, services, and online purchasing functions. Defendant failed to timely appear or respond, and the Court was preparing to enter a default judgment before the matter ultimately resolved through a confidential settlement, which, upon information and belief, included Defendant's agreement to remediate its Website to comply with WCAG accessibility standards.

38. Defendant was sued again in *Rendon v. Ramy Brook, LLC,* No. 1:22-cv-10437 (S.D.N.Y.), another ADA website-accessibility action alleging substantially similar violations. The Rendon complaint identified many of the same barriers documented in *Fischler*, including missing alternative text, unlabeled buttons, inaccessible navigation, and keyboard-inoperable controls. That action also concluded in a settlement, providing Defendant with yet another

opportunity — and contractual obligation — to bring its Website into compliance with the ADA.

39. These two prior lawsuits put Defendant on unmistakable notice that its Website was inaccessible to blind users and violated federal disability law. Defendant had actual knowledge of the ADA's requirements, the WCAG technical standards, and the specific barriers affecting blind consumers. Despite this notice, and despite entering into multiple settlement agreements that required accessibility remediation, Defendant failed to implement the promised fixes.

40. The extensive accessibility failures documented in the SortSite and WAVE reports — including **1,295 pages** with Level A violations, **1,278 pages** with Level AA failures, 101 WAVE errors, 162 contrast failures, and 2,665 structural issues — demonstrate that Defendant did not remediate its Website after *Fischler* or *Rendon.* Instead, Defendant continued to operate an inaccessible Website for years, evidencing a pattern of noncompliance, reckless disregard, and a knowing failure to provide equal access to blind and visually impaired consumers.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of herself and a class of all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2).

42. The proposed class is defined as: All legally blind individuals in the United States who have been denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's Website, https://www.ramybrook.com, due to Defendant's failure to design, construct, maintain, and operate the Website to be fully accessible to and independently usable by blind and visually impaired persons who use screen-reading software, during the applicable statute of limitations period.

43. The proposed New York sub-class is defined as: All legally blind individuals in the State of New York who have been denied the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, and accommodations of Defendant's Website due to accessibility barriers, during the applicable statute of limitations period.

44. Numerosity (Fed. R. Civ. P. 23(a)(1)): The proposed class and sub-class are so numerous that joinder of all members is impracticable. According to the National Federation of the Blind, approximately 7.6 million Americans are visually impaired, and approximately 1.3 million are legally blind. A significant portion of these individuals use screen-reading software and have been or will be denied equal access to Defendant's Website.

45. Commonality (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all members of the class, including: (a) whether Defendant's Website is a "place of public accommodation" under the ADA; (b) whether Defendant's Website denies blind and visually impaired individuals full and equal access to its goods and services; (c) whether Defendant has failed to take steps to make its Website accessible in violation of the ADA, NYSHRL, NYCRL, and NYCHRL; and (d) whether Defendant's conduct constitutes discrimination under applicable federal, state, and city laws.

46. Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claims of the proposed class. Like all class members, Plaintiff is a legally blind individual who has been denied full and equal access to Defendant's Website due to accessibility barriers that affect all blind users uniformly.

47. Adequacy (Fed. R. Civ. P. 23(a)(4)): Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff has retained counsel experienced in ADA accessibility litigation and has no interests antagonistic to those of the class.

48. Injunctive Relief Class (Fed. R. Civ. P. 23(b)(2)): Defendant has acted on grounds generally applicable to the class, making appropriate final injunctive relief and corresponding

declaratory relief appropriate with respect to the class as a whole. The accessibility barriers on Defendant's Website affect all blind and visually impaired users identically.

**FIRST CAUSE OF ACTION**
**Violation of Title III of the Americans with Disabilities Act**
**(42 U.S.C. §§ 12181 et seq.)**

49. Plaintiff re-alleges and incorporates by reference the allegations set forth above as though fully set forth herein.

50. Section 302(a) of Title III of the ADA provides that:

"[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

51. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

52. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is

> excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.
>
> 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

53. Defendant's Website, https://www.ramybrook.com is a "place of public accommodation" within the meaning of 42 U.S.C. § 12181(7)(E)-(F), as it constitutes a sales establishment and/or a service establishment.

54. Defendant has discriminated against Plaintiff by failing to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff and other blind and visually impaired individuals, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

55. The accessibility barriers documented in the SortSite reports constitute a failure to provide auxiliary aids and services necessary to ensure effective communication with individuals with disabilities, as required by 42 U.S.C. § 12182(b)(2)(A)(iii).

56. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

57. Plaintiff is entitled to injunctive relief requiring Defendant to bring its Website into compliance with the ADA by making it fully accessible in conformance with WCAG 2.1 Level AA.

58. Plaintiff is also entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

**<u>SECOND CAUSE OF ACTION</u>**
**Violation of the New York State Human Rights Law**
**(N.Y. Exec. Law §§ 290 et seq.)**

59. Plaintiff re-alleges and incorporates by reference the allegations set forth above as though fully set forth herein.

60. The NYSHRL provides that "[n]o person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation ... shall directly or indirectly refuse, withhold from or deny to any person ... any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a).

61. Defendant's Website constitutes a place of public accommodation within the meaning of the NYSHRL.

62. Defendant has violated the NYSHRL by failing to make its Website accessible to Plaintiff and other blind and visually impaired individuals, thereby denying them full and equal enjoyment of the goods, services, and accommodations available through the Website.

63. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

64. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

65. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is

inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

66. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

67. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

68. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law

§ 296(2) and the discrimination continues to date.

69. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

70. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action under the NYSHRL and Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## THIRD CAUSE OF ACTION
## Violation of the New York State Civil Rights Law
## (N.Y. Civ. Rights Law §§ 40 et seq.)

71. Plaintiff re-alleges and incorporates by reference the allegations set forth above as though fully set forth herein.

72. The NYCRL provides that "[a]ll persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement." N.Y. Civ. Rights Law § 40.

73. Defendant has violated the NYCRL by denying Plaintiff and other blind and visually impaired persons full and equal access to the accommodations, advantages, facilities, and privileges of its Website.

74. Plaintiff is entitled to compensatory damages of not less than $500 per violation, as provided by N.Y. Civ. Rights Law § 40-d, as well as injunctive relief and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION
## Violation of the New York City Human Rights Law
## (N.Y.C. Admin. Code §§ 8-101 et seq.)

75. Plaintiff re-alleges and incorporates by reference the allegations above as though fully set forth herein.

76. The NYCHRL provides broader protections than its state and federal counterparts. It prohibits discrimination in places of public accommodation and is to be construed liberally to accomplish its remedial purposes.

77. Defendant has violated the NYCHRL by failing to ensure that its Website is accessible to and usable by blind and visually impaired individuals, thereby denying Plaintiff and other similarly situated individuals the full and equal enjoyment of goods, services, and accommodations.

78. Plaintiff is entitled to compensatory damages, civil penalties, injunctive relief, and reasonable attorneys' fees and costs under the NYCHRL.

## FIFTH CAUSE OF ACTION
**Declaratory Relief**
**(28 U.S.C. §§ 2201 et seq.)**

79. Plaintiff re-alleges and incorporates by reference the allegations above as though fully set forth herein.

80. An actual controversy exists between Plaintiff and Defendant concerning Defendant's obligations under the ADA, NYSHRL, NYCRL, and NYCHRL to make its Website accessible to blind and visually impaired individuals.

81. Plaintiff is entitled to a declaratory judgment that Defendant's Website violates the ADA, NYSHRL, NYCRL, and NYCHRL due to its inaccessibility to blind and visually impaired individuals who rely on screen-reading technology.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and grant the following relief:

a. Certify this action as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2), appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

b. Issue a permanent injunction requiring Defendant to design, construct, maintain, and operate its Website in full compliance with WCAG 2.1 Level AA, the ADA, and all applicable accessibility standards, including but not limited to: (i) adding accessible names and alt text to all images, buttons, and form controls; (ii) ensuring all interactive elements are keyboard-operable and properly voiced by screen readers; (iii) providing sufficient color contrast between text and background; (iv) using descriptive, non-ambiguous link text; (v) properly structuring headings and ARIA roles; and (vi) retaining an independent accessibility consultant to conduct periodic audits;

c. Award Plaintiff and the class compensatory damages, including statutory damages of not less than $500 per violation under the NYCRL;

d. Award Plaintiff and the class punitive damages as permitted by law;

e. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and applicable state and city law;

f. Issue a declaratory judgment that Defendant's Website violates the ADA, NYSHRL, NYCRL, and NYCHRL;

g. Award pre-judgment and post-judgment interest; and

h. Grant such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
March 30, 2026

Respectfully submitted,
JOSEPH & NORINSBERG LLC
By: *<u>/s/ Robert L. Schonfeld</u>*
ROBERT L. SCHONFELD
825 Third Avenue
New York, New York 10022
(212) 222-5700
rschonfeld@employeejustice.com